Good morning, may it please the court, I am Leah Kent, here representing Jill Cassette, the plaintiff and appellant in this case. This is a civil case that the district court dismissed as summary judgment, and we are here respectfully requesting that the court reverse the judgment of the trial court. I would like to start by briefly reviewing a few of the key facts of this case. On November 25, 2003, Jill Cassette's home was searched and she was arrested for promoting prostitution, money laundering, and possession of stolen property. The King County Sheriff's Department, based on information from Cassette's mother's ex-boyfriend, had expected to find evidence at Cassette's house, including documents for the prostitution ring and, most spectacularly, perhaps capped pipes full of cash buried in her backyard. Instead, they seized only papers, bills, and computer equipment. As to the prostitution charges, the search was basically fruitless. Nonetheless, 13 days later, having had ample opportunity to review the non-existent fruits of their search, the department held a press conference announcing that they had busted a mother-daughter prostitution ring. Within hours, news vans were on the cul-de-sac where Cassette lived, the story was on the national wire, and eventually Cassette had to sell the house and send her children out of state to escape to publicity. There never was any mother-daughter prostitution ring. Ms. Cassette was not charged in this matter until after she filed this civil suit, and the charges were dismissed because there was no evidence for her involvement. But these events gave rise to Cassette's civil claims in this case, which included a Fourth Amendment Franks claim for omissions and misrepresentations in the search warrant, a state law false arrest claim, and a state law defamation claim, all of which were dismissed at summary judgment. We come here in appeal of four assignments of error. The first is that the district court was incorrect in finding qualified privilege as a matter of law on Cassette's state law defamation claim. The second is that the district court failed to view all evidence in the light most favorable to Cassette when considering their materiality of omissions and mischaracterizations in the warrant affidavit. The third is that the district court failed to apply the Aguilar-Spinelli test and its corroboration requirement when determining probable cause for Cassette's state law false arrest claims. And fourth is that the district court applied the federal rather than the state summary judgment threshold on the state law claims. The last three there bear on probable cause. The first error as to the defamation claim does not, so I would like to discuss it first here. In Washington, like in most states, police officers have a qualified privilege to communicate with the public and are shielded from defamation claims as a result. The qualified privilege, however, is overcome if the plaintiff can show the officer made the statements either knowing the statements were false or in reckless disregard as to their truth or falsity. Reckless disregard may be found when there is evidence demonstrating that the officer had a high degree of awareness of the probable falsity of the statement. In this case, the alleged statement being that Jill Cassette was the daughter in the mother-daughter prostitution ring. Here, summary judgment was improper because Cassette came forth with evidence from which a reasonable jury could find reckless disregard. That evidence includes the fact that the warrant as to Jill Cassette from the beginning was weak and uncorroborated, coming from a vengeful informant. The search was fruitless as to the prostitution ring listed on the warrant where the police would expect to find pipes full of cash buried in the backyard. That was not there. I guess I'm not entirely following your, that the search didn't turn up what they were looking for. I mean, that it's still, it seems to me everything goes back to probable cause here. And probable cause is not, you can't establish probable cause because you find things at a scene if it wasn't there in the first place. And I don't think you can negate probable cause if it's present just because you don't find something. So I think you really have to, you have to focus on the probable cause. I don't see the relevance of that they didn't find what they were looking for. As to the defamation claim, the probable cause doesn't end up being relevant because the analysis and the defamation claim can go, there was probable cause for the search. In terms of the defamation claim, you could grant that. We don't grant that, but you could. And then say, but if there's probable cause for the search, yet the search is entirely fruitless. The Sheriff's Department has two weeks to consider that evidence and nonetheless comes forth with this announcement that they've busted a mother-daughter prostitution ring and Jill Cassette isn't there. Are you saying that the only relevance of the fact that they didn't find anything on the search is as to the defamation? Or are you saying that that's, it seemed to me in your briefs that you argued that that was relevant as to whether probable cause existed. And that I do not see. No, probable cause is judged moment by moment by what the police officer knows then. So judging whether the warrant had probable cause, it would be judged as a snapshot at that time. That doesn't have anything to do with whether they found something or they didn't. You can't bootstrap it either way. Right. But at the same time. There were no probable cause, but then they found everything. They found tons of stuff. That doesn't make that necessarily admissible if they didn't have a right to be there. Correct. But as to the defamation claim, the argument is that reckless disregard, like probable cause, is judged at the moment the defamatory statement is made. So regardless of whether there's probable cause earlier, if you have some kind of probable cause, you have a fruitless search. Was she identified by name in anything or is it just a mother-daughter prostitution ring? She is identified. It is identified as a mother-daughter prostitution ring. They gave the name of the business and that was sufficient for the news media within less than 24 hours to locate her house. She also experienced friends who lived elsewhere in the United States because the announcement also said the women's exact ages and where they lived. So it's a mother-daughter prostitution ring called the Garden of Eden, but they didn't use her name. They did not. Or the mother's name. They did not at that point. Okay. But in Washington, if the person can be definitively identified from the information given out by the defaming party, that is sufficient. And obviously she was later definitively identified. So our argument is basically that on the evidence that Jill Cassatt presented that a jury is entitled to decide whether the officer with that information is acting in reckless disregard. I don't mean to beat a dead horse, but is there any case connecting reckless disregard with probable cause or absence of probable cause? I don't. Defeat a claim of reckless disregard for the sheriff to say, well, we had probable cause to believe this is true. We don't believe it does. I don't believe either party cited a case to that effect, though. But what the district court did in evaluating the presence or absence of reckless disregard is basically said that the detectives' pre-search investigation, in effect, outweighed the fact that the search was fruitless and they had 13 days to discover that. We regard that as an impermissible weighing of the evidence at summary judgment and believe that on these facts the jury is entitled to decide that claim. Next I'd like to discuss the materiality of the search warrant omissions. The district court, we believe, engaged in impermissible weighing of the evidence in determining the materiality of those omissions. Well, but when you bring a motion like this, the district court, if you say there are material omissions, the district court has to look at what they were and then the court has to look at if you put them in, would you have signed the warrant or not, right? So how can you, I guess, what's the, there's got to be some weighing there. There does have to be some weighing. What's the impermissible weighing? The court has to fairly clearly, it's fairly clear in the precedent that they first have to construe all the facts and draw all inferences in light in favor of the non-moving party and then from there weigh the materiality. And we don't believe they did so. We also believe that they. All inferences in favor is the summary judgment standard, right? Yes. But the standard on evaluating probable cause, because you had essentially was a Frank's hearing or what, you know, to that effect, that's not the same standard as probable cause, right? I mean, as to summary judgment and the probable cause standard are not the same. So you seem to be importing one standard into another. So when the court's determining probable cause and doing the Frank's hearing, the court has to look at what the statements were that were left out, right? And what are the ones that you said were left out? The statements that we stated were left out were that Skinner had a frankly vengeful motive. That was omitted from the warrant. Draper had information that the service dog issue was somewhat of a red herring but omitted that. Draper knew that Skinner had lied to him about his motive but omitted that. Draper represented the cassette, told him she stole Skinner's computer. Cassette contested that and said she never said that to him. Draper knew the utilities and mail were in Cassette's name in order to hide and protect her mother from Skinner and also knew that they had only been in Cassette's name since September 2003, which is consistent with Cassette's account. But he omitted that. And Draper had actually attempted to corroborate the email that Skinner had submitted that was allegedly between Jill Cassette and one of the escorts, but was unable to do so and omitted that failed corroboration attempt from the warrant. Okay, and then what did the district court say? The district court basically discounted Jill Cassette's evidence, in particular her sworn declaration. They concluded that the — They believed the officer, right? The district court believed the officer and also concluded, in some cases, that things were adequately disclosed in the warrant that were not actually disclosed in the warrant. So the district court drew conclusions like, because the fact of a domestic violence history between the parties was disclosed, that was as good as disclosing a frankly vengeful motive. Or situations like, because some of the ambiguity about the service dog was disclosed, that was as good as disclosing that there was evidence that the informant was lying about the service dog. Okay, so there was something about Joker, but they thought there should be more about Joker than was in there, right? Right. And then with respect to the assertion that she had — the same thing with respect to Ms. Cassette's assertion that she had stole Draper, that she did not steal the computer and, in fact, had been told to keep it by the Everett police, that that was in the search warrant as that she stole it,  that was in there. Because she had possession of the computer. Yes. Okay. And I'd like to just hold the rest for rebuttal. Okay. Thank you. Good morning. Morning. May it please the Court, I'm John McHale. I'm with the King County Prosecutor's Office, and I'm here on behalf of my clients, King County and Detective Edward Draper. We'll keep my argument brief for the most part. I think most of it is well covered in the briefing itself. It's our strong position that the trial court properly granted summary judgment in this matter and that the plaintiffs did not raise a genuine issue of material fact as to any of the four claims that are still remaining. We ask that you affirm the court's summary judgment dismissal of this matter. There was a search warrant here. Is that correct? That's correct. What was the probable cause for the search warrant? It's lengthy, but essentially there was probable — to search and arrest both Ms. Cassette and her mother for — You said search and arrest. Where does it say in that warrant that you can arrest people? It does not say that. That is correct. But it was search and detain during the course of the execution of the search warrant if evidence is found to justify an arrest, then to arrest. Oh, but they didn't, did they? As discussed earlier, there was not — well, there was some physical evidence. It was actually found in Ms. Cassette's home that I think would have justified an arrest, and that would — there were three crimes that she was charged with. I'm sorry. Go ahead. I interrupted your answer to Judge Thompson's question, and I don't want to take you away from that too long, but we can come back to this. Okay. We'll get to the arrest. Okay. I'll get to it. So there was probable cause for the search of both Ms. Cassette's residence and that of her mother, Ms. Dean, as a result of an ongoing investigation about the operation of the Seattle Garden of Eden Escort Service prostitution service, and that initially — well, it's sort of ironic that we end up in the Ninth Circuit Court of Appeals for a little dog named Joker, but initially that's how the case got started is this gentleman, Ms. Dean's former boyfriend — Let's just talk about the dog Joker. Yes, sir. It wasn't as much in the affidavit for the warrant as Ms. Kent says there should be, and there was — she says not enough about the dog Joker.  My question would be to demonstrate the prejudice that the witness — Skinner or Skinser? Yes, Jeffrey Skinner, Your Honor. Skinner would demonstrate Skinner's prejudice against the mother and the business. Is that right? I mean, that — and as I also understand it, there was a good deal of information disclosed in the warrant which indicated that Skinner was indeed prejudiced against it. He wanted to see the business, what, scraped to the ground or something? There were a number of sort of broad, strong statements and e-mails from Mr. Skinner. As far as the dog Joker is concerned, there may have been some things left out which would have established prejudice, but there were ample representations of prejudice that were in the affidavit for the search warrant. Is that correct? That would be our strong position that — first of all, with regard to the dog Joker, the detective was quite accurate in saying that he had heard from Mr. Skinner, he looked into it, and he hadn't found anything conclusively that established that the dog should rightfully have been with either Ms. Dean or with Mr. Skinner. And that's absolutely correct. I mean, there were a number of back-and-forth protection orders that went between the parties. Ultimately, the last one on the behalf of Ms. Dean didn't say anything about the dog. Mr. Skinner's first — That all seemed to be a little minor in the whole situation. There was a conversation that the daughter had with one of the girls who had been an escort. Is that correct? That's correct, Your Honor. She had told the girl to communicate with her that she was handling the mail and taking care of her mother's business or something like that? That's correct, Your Honor. And I think that is one — And there was a car that the mother used in connection with the escort service, and that was registered in the daughter's name. Is that right? That's correct, Your Honor. And those are sort of the three — the big three of probable cause in this case against Ms. Cassette. Well, two of the big three. Those two, the car that was seen by surveillance and independent investigation beyond — and I guess in part with the help of Mr. Skinner, but in independent observations and investigation, contacting women that were involved in this prostitution operation was an older BMW that was registered to Ms. Cassette. Now, they knew all of that by the time when they got the warrant to search. Then they get to the place, the investigators, I guess, and the decision is made to arrest the daughter.  Yes, Your Honor. What additional circumstances arose after they got to the place and were making their search, which permitted them to arrest the daughter? If we're going back to physical evidence that even found at the scene — Time to get to Judge Canby's question. Okay, I will get back to that. One of the cases that's cited, and it's a state case, and it's Guerno v. LeConner, is what I'm going to reference here. But when they get — what they do find at that residence is a computer, some file cabinets that belong to Mr. Skinner. And so what the Guerno case will say is that, let's say, even if you go in with the execution of a search warrant and there isn't probable cause on one potential charge that you have there, but during the course of that execution, if there is evidence of another charge that you had referenced in the search warrant, in this case possession of stolen property, then that would have provided sufficient probable cause to arrest Ms. Cassette at the scene. And I think that's a part of the basis of her arrest at the time of the search warrant execution. Would they — could you rely on probable cause before you got to the house for the arrest? I would think that you could at that point. I mean, a big part of this, and the big of the three, is really the Internet service provider. I mean, this was the third — actually, the fourth warrant that Detective Draper had obtained during the course of this investigation. The first three were all related to finding out who was responsible for the Seattle Garden of Eden website. And when it came down to the far end of it, it turned out that Ms. Cassette was actually the person who was — the Internet service provider was registered or was in her name. So it was quite clear to the detective that she should have had some knowledge of it, of the operations in that sense. Beyond that, I think also the e-mail contact with Michelle or Missy was quite indicative of Ms. Cassette's overall involvement in this. And the appellant now comes in and says that the detective should have done some additional work. But certainly, you know, in following up with Missy, he did — when he had to respond to that, it wasn't something that he knew he had to respond to at the time of preparing the search warrant affidavit, but he did have some additional contact with Ms. Michelle and confirmed that she had indeed spoken with Ms. Cassette. And it was very consistent with what Ms. Cassette even says now that she told Detective Draper, and that is that in her mother's absence at that time, she was handling everything. The bills, the phone calls, the e-mails, everything. Did the district judge say — obviously there that Ms. Cassette has made certain allegations that certain things should have been included in the search warrant. Did the district court just basically say none of those needed to be included, or did the district court find that there were some that should have been and then write them in and then make a determination of whether the warrant would have been signed? How did the district court parse that out? So you're getting to the material part of it and that part of the argument? Did the district court just basically say everything wasn't material, that there was enough in there, or did the district court find that there were any material omissions and then take the next step? I don't think the district court found that there were any material omissions. They looked at it, and the big part of the argument in Plaintiff's briefing at that time was that Detective Draper didn't include all this bad stuff that he could have thrown in about Mr. Skinner. But it was clear that when you look at it, and I'm sure you all have, when you look at the search warrant affidavit, he explains clearly that these two had lived together for quite four years. I know, but just for the analytical framework of when you do a Franks hearing, they allege that there were certain material omissions. Did the district court say there were not any material omissions or what did the district court say? Because if you find a material omission, then you've got to write it in and then you've got to decide would a judge have signed it anyway? The court did not find that there were any material omissions. Okay. That's my understanding or read of the decision. Sorry? Yes. With approximately five minutes remaining here, your preference, would you rather continue to address the Fourth Amendment claim or would you like to address the other claims that are outstanding? The defamation, you do the search and you arrest and release Ms. Cassatt and no charges are made. What's the press release all about? In this case, the press release did come out some nine days later. Sometimes it takes a bit of time for the ball to roll. Here in Washington State, if you are arrested for something and if charges aren't filed within 72 hours, you're released. So charges were not filed until a later point in this case. But the press release was issued. It was issued in a rather gentle way. There was no name calling, things of that note. They just noted that a prostitution ring had been arrested, that a mother and daughter had been arrested as part of that or had been included as part of that arrest. At that time, there was no indication. I mean, the probable cause was still strong, if not stronger at that point, than it was at the time when the search warrants were executed, because you had the additional information that had been gained from looking at paperwork at Ms. Dean's house and again. All right, but you're talking past each other. What does probable cause have to do with the defamation charge? I think it would be okay. They understand Appellant's position that probable cause is pivotal on the other three causes of action, but as to the defamation, that's not the end-all, be-all. It is key. Maybe we're focusing too much on that just because of the nature of the other charges. But I think it's important because they are alleging that what they have to say is that the officer went beyond the qualified privilege that he had and he made a statement knowing that it was false or that it was made with reckless disregard as to the truthfulness. And so what that officer, the press officer who made that statement at the time, was aware of was what evidence there was of probable cause to arrest the two women at the time. So I guess that's how I get into the probable cause point from there. So at the time when this somewhat gentle statement was made, and I know the Appellant will say that it had a significant impact on her, but at the time when that was made, the evidence that was available was certainly that there was probable cause not only for the search, but that there was probable cause to arrest her. I guess you're still talking probable cause. I suppose the question is whether a reasonable officer would have thought it to be true. That's... Or, if you want to use the reckless disregard and knowing falsity. And I'm more accustomed with the qualified immunity. This is sort of a different qualified immunity or privilege that's here. But certainly a reasonable officer in the situation of the press officer who was, you know, believed that the information that he had was accurate and, you know, didn't, you know, didn't exaggerate anywhere, didn't act with any reckless disregard for the truth of the matter. I'm at one minute, unless there are other questions. I want to thank you for your time. I ask that you please affirm the summary judgment dismissal of this matter on behalf of my clients, King County and Detective Edward Draper. Thank you. Thank you for your argument. Thank you. I have three items to discuss in rebuttal. I never thought I'd be bringing the warrant affidavit up here with me. As to the probable cause defamation nexus, I really do think that the probable cause determination cannot be determinative as to qualified privilege because then you're essentially holding that regardless of what is later learned, regardless of what is learned in the search, if they've ever had probable cause to search someone's house, they can make a public announcement that that person is guilty of that crime. And under that kind of analysis, they could make, they could hold that press conference again today. And I think that this simply is a matter of common sense and what is fair to citizens in their dealings with the police and with the police's kind of power and ability to get their stories into the press. That presents a problem. Third, there's a few issues with the search warrant affidavit. The e-mails from Skinner in which he talks about wanting to see the Garden of Eden being plowed into dust and seems quite zesty about the whole thing and kind of uses a lot of derogatory language toward Ms. Dean. Those were actually not included in the warrant affidavit. We got those in discovery. The e-mails, the fact that her car, Jill Cassette's, one of the corroborating features is Jill Cassette's car is registered with her mother. That doesn't actually corroborate any nexus with any crime, to co-own a car with a family member. And then there's also some issues with the Internet service provider. And there's been a little kind of back and forth with the representations on this. It seems fairly clear to me from the discussion at the bottom of page seven to the top of page eight of the search warrant affidavit that what was determined is that the Internet service provider, Verizon, who kind of runs the line to Ms. Dean's house, that account was in Cassette's name. The business that did the web hosting that actually was the server, the box that the business website lived on, was Zipcon. That was paid for with Ms. Dean's credit card. It was clearly in Ms. Dean's name, not Ms. Cassette's name. So I just wanted to clear those up. And then as to the material emissions analysis, it appears that the court, our argument is that the material emissions analysis should proceed that, first the plaintiff needs to establish that the emissions were, bring forth some substantial evidence such that, to show that the emissions were recklessly made or were made, were knowingly false, which we believe she did. Then at that point the court, the question is, should there be a piecemeal consideration of the materiality of each of those emissions, or should, in fact, the court kind of, you know, rewrite the warrant to say, okay, what if each of these that you have evidence to was included, or what if each of these misleading statements that you have evidence to was omitted, and then take a look at the warrant as a whole. Would you agree that the district court didn't get to the rewriting? The district court basically found them not to be material? I think the district court needs to get to the writing to find it to be material because the determination of probable cause under Gates is made on a common sense way. No, but you have to make the determination. I mean, let's say there had been nothing of that. Let's say that Mr. Skinner was listed as, that they don't, that there was nothing in there about any relationship, any knowledge of this person or something like that. Well, then, I mean, that would have been a whole different issue, right? And the court would then determine, okay, there obviously was a grudge, this is material, and then you put them in, and the court could have at that point in time said, well, I don't think a judge would have signed the warrant knowing that, you know, and therefore you vitiate probable cause. But here, it appears the court found that they weren't material. Now, I mean, we're reviewing that, obviously. If we thought that they were material, then you have to write them in, and then you get to how it affects probable cause. But it doesn't sound like the court wrote them in here. It sounds like the court just basically said, I don't think they're material because contained in the warrant there were statements of, you know, certain grudge statements that I think makes them less than material. Okay. Okay. I guess you're moving to overtime, but I took you there. Thank you. Thank you for your argument. This matter would stand submitted.
judges: Canby, Thompson, Callahan